UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
                                                          :
SEAN HILL,                                                :        03 CV 1283 (ARR)
                                                          :
                            Plaintiff,                    :        NOT FOR PRINT OR
                                                          :        ELECTRONIC
            -against-                                     :        PUBLICATION
                                                          :
THE CITY OF NEW YORK, DETECTIVE GREGORY                   :        OPINION AND ORDER
BARRETT, individually and in his official capacity as a   :
New York City Policy Officer, and POLICE OFFICER          :
JOHN DOES, individually and their official capacities as  :
New York City Police Officers, the identity and number   :
of whom are presently unknown,                            :
                                                          :
                            Defendants.                   :
------------------------------------------------------------------ X

ROSS, United States District Judge:

In this action, plaintiff Sean Hill ("plaintiff" or "Hill") brings suit against defendants

Detective Gregory Barrett ("Barrett"), Police Officer John Does ("Does"), and the City of New

York ("New York City") (collectively, "defendants") pursuant to 42 U.S.C. § 1983 and various

state tort laws. Specifically, plaintiff seeks relief for violations of his Fourth and Fourteenth

Amendment rights and for state-law claims, such as assault, battery, intentional infliction of

emotional distress, and negligence. At this time, the court considers defendants' motions for

summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons

set forth below, defendants' motions are granted in part and denied in part.

## BACKGROUND

Unless otherwise noted, the parties do not contest the following facts. On the afternoon

July 2, 2002, plaintiff witnessed a shooting, which resulted in the death of the victim, on Rutland

Road and 94th Street in Kings County, New York. Ptf. 56.1 Stmt. ¶¶ 1-2. Plaintiff was riding a yellow and black motorcycle at the time of the shooting. Id. ¶ 3. After observing the shooting, plaintiff took a closer look at the victim to figure out if he knew him. Id. ¶ 4. After realizing that he did not know the victim, plaintiff drove his motorcycle to the corner of 94th Street and parked it. Id. ¶¶ 5, 8. Plaintiff remained on the scene, talking to his friend John about the incident. Id. ¶ 10.

Police arrived on the scene and began securing the area by taping around its perimeter, where plaintiff was located. Id. ¶¶ 11-14. Plaintiff attempted to leave the scene, but an unidentified police officer told him he could not leave the taped-off area. Id. ¶ 13. Plaintiff explained that he had to leave to make his 3:00pm shift as a New York City Transit Authority employee. Id. ¶ 15. Plaintiff provided his name to the police officer and was permitted to leave the scene. Id. ¶¶ 19-21. He then drove away from the scene down Rutland Road. Id. ¶ 24. According to defendants, at some point, a description of the perpetrator was transmitted over the radio to police officers. Def. Barrett 56.1 Stmt. ¶¶ 44-45. The perpetrator was described as an African-American male who was driving a yellow and black motorcycle. Id. ¶ 46.

Defendant Barrett and his partner, Detective Patrick Rafferty, were driving in the vicinity of the crime scene at this time and received the radio transmission describing the perpetrator. Id. ¶ 44. They observed plaintiff, who apparently matched the description of the perpetrator, driving on his motorcycle from the crime scene and started following him. Id. ¶¶ 49, 52. Plaintiff took a left on Remsen Avenue, and the detectives continued to follow him. Ptf. 56.1 Stmt. ¶ 26. He then stopped at a red traffic light at the intersection of Remsen Avenue and Winthrop Street. Id.

According to plaintiff, he was stopped at the light for about a minute when a car hit his motorcycle from behind and threw him from the vehicle to the ground. Id. ¶¶ 30-32. It is undisputed that the New York City Police Department has a written policy prohibiting officers from using the tactic of "ramming" other vehicles in an attempt to stop those vehicles. See Ptf. Ex. I; Def. New York City 56.1 Stmt. ¶ 113. Plaintiff claims that two white male officers and two black male officers surrounded him with guns in his face and then threw him on the car, handcuffed him, and searched his person. Ptf. 56.1 Stmt. ¶¶ 33-34. Plaintiff further claims that he broke his right hand as a result of defendants' conduct. Id. ¶¶ 71, 75, 80. An independent witness, Dave Campbell, corroborated plaintiff's story in interviews with the Civilian Complaint Review Board during its investigation of this incident. See Ptf. Ex. C at 6.

Defendants, on the other hand, claim that Defendant Barrett stopped his car behind the motorcycle and observed Detective Rafferty exit the passenger side of their vehicle and approach the right side of plaintiff's motorcycle. Def. Barrett 56.1 Stmt. ¶¶ 62-63. Defendant Barrett further observed Detective Rafferty grab plaintiff's right hand and remove it from the motorcycle throttle. Id. ¶ 64. At this time, Defendant Barrett parked his vehicle and then approached plaintiff's motorcycle from the left side, where he helped Detective Rafferty remove plaintiff from the motorcycle. Id. ¶¶ 65-68. Meanwhile, two deputy sheriffs arrived on the scene and parked their car in front of the motorcycle. Id. ¶¶ 72-73. Defendants claim that, though the motorcycle fell to the ground, plaintiff never fell on the ground. Id. ¶ 85. Defendants also maintain that plaintiff never complained about any injuries and there was no damage to the rear of plaintiff's motorcycle. Id. ¶¶ 86, 105.

Thereafter, plaintiff was detained at the Remsen Avenue location until a witness identified plaintiff as being at the scene of the earlier murder. Id. ¶ 106. According to plaintiff, he and his friends who joined him at the Remsen Avenue location explained to the police that he was not involved in the murder. Ptf. 56.1 Stmt. ¶ 43. Detectives Barrett and Rafferty directed Officers Lynah and Mason to transport plaintiff to the 67th Precinct. Def. Barrett 56.1 Stmt. ¶ 107-08. There, he was placed in an interview room, where he was questioned by Detectives Hardman and O'Brien. Id. ¶ 120. According to plaintiff, he was in the room for approximately seven hours. Ptf. 56.1 Stmt. ¶¶ 60-61. He subsequently was released, and he was given a letter for his employer explaining that he missed his shift because he was aiding the police in an investigation. Def. Barrett 56.1 Stmt. ¶ 130.

Plaintiff, who is represented by counsel, filed his initial complaint on March 17, 2003. On April 29, 2004, plaintiff filed an amended complaint. Discovery was completed on April 15, 2005. See Order dated February 28, 2005. Defendant New York City moved for summary judgment on August 10, 2005. Defendant Barrett moved for summary judgment on August 11, 2005.

## DISCUSSION

A.    Standard for Summary Judgment

Under Rule 56, summary judgment is proper if the pleadings, depositions, answers, interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Proc.56(c). An issue of fact is genuine when "a reasonable jury could return a verdict for the nonmoving party," and facts are material to the outcome of the litigation if

4

application of the relevant substantive law requires their determination. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). The moving party has the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex Corp. v. Cartrett, 477 U.S. 317, 323 (1986). The substantive law determines the facts that are material to the outcome of a particular litigation. See Anderson, 477 U.S. at 250; Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1320 (2d Cir. 1975). In determining whether summary judgment is appropriate, a court must resolve all ambiguities, and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).

If the moving party meets its burden, the burden then shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. Proc. 56(c). The non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48. Only when it is apparent that no rational finder of fact "could find in favor of the non-moving party because the evidence to support its case is so slight" should summary judgment be granted. Gallo v. Prudential Residential Servs. Ltd. Partnership, 22 F.2d 1219, 1223 (2d Cir. 1994).

B.     Claims Against Defendant Barrett

1. Section 1983 Claims

5

i) *Excessive Force*

Barrett argues that plaintiff's excessive force claims under § 1983 should be dismissed because plaintiff's initial stop and detention was based on reasonable suspicion and any force used in detaining plaintiff was de minimus and, therefore, objectively reasonable. The Fourth Amendment protects against unreasonable seizures. See Graham v. Connor, 490 U.S. 386, 395 (1989). "[T]he 'reasonableness' of a particular seizure depends not only on when it is made, but also on how it is carried out." Id. (emphasis in original) (quoting Tennessee v. Garner, 471 U.S. 1, 7-8 (1985)). Thus, a plaintiff can "prevail on his excessive force claim if he is able to show that [the defendant officer] used more force than was necessary to subdue him." Curry v. City of Syracuse, 316 F.3d 324, 332 (2d Cir. 2003). The officer's actions, however, "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396. Determining whether a particular seizure is reasonable is a fact-intensive process, which "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Id. (internal quotation marks and citations omitted). More specifically, such an inquiry requires the factfinder to apply "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. Given the need for such a fact-intensive inquiry, "granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." Amnesty America, 361 F.3d at 123.

The court concludes that summary judgment is not appropriate with regard to plaintiff's excessive force claim because there is clearly a genuine issue of material fact as to whether Barrett used his vehicle to strike plaintiff's motorcycle. It is undisputed that on the afternoon of July 2, 2002, Barrett and Detective Rafferty stopped plaintiff at a red traffic light on Remsen Avenue, handcuffed him, placed him in the back of a patrol car, and sent him to the 67th Precinct to be questioned about a murder that he witnessed. Plaintiff contends that Barrett "rammed" his vehicle into plaintiff's stopped motorcycle, throwing plaintiff off the motorcycle on to the ground. Ptf. 56.1 Stmt. ¶¶ 30-34. Plaintiff supports his allegation with his own deposition testimony, see Hill Dep. at 48-49, and the CCRB report,[1] which substantiated plaintiff's claim of that Barrett improperly used his vehicle "to hit [plaintiff] off his motorcycle thereby injuring him." See Ptf. Ex. C at 21. In addition to concluding that plaintiff was a credible witness, CCRB relied on photographs of plaintiff's motorcycle after the incident, documentation of plaintiff's injuries, and the testimony of various witnesses, including an independent eyewitness who corroborated plaintiff's story. Id. Barrett contests plaintiff's version of events, claiming that he did not use his vehicle to hit plaintiff's motorcycle. See Barrett Dep. at 46. Barrett contends that he stopped his vehicle behind plaintiff's motorcycle and then aided Detective

[1] In his reply memorandum of law, Barrett argues that the CCRB report is inadmissible hearsay. The court disagrees. The CCRB report fits within Rule 803(8)(C) of the Federal Rules of Evidence, which provides that "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth factual findings resulting from an investigation made pursuant to authority granted by law" are admissible in civil proceedings, "unless the sources of information or other circumstances indicate lack of trustworthiness." The CCRB report clearly represents the factual findings of the investigation of plaintiff's complaint. Barrett simply asserts that the CCRB report is hearsay, but he fails to provide any evidence indicating that the sources of the report lack trustworthiness. Thus, the court concludes that the CCRB report is admissible as a public record pursuant to Rule 803(8)(C) of the Federal Rules of Evidence.

7

Rafferty in removing plaintiff from his motorcycle. Id. at 46-50. The testimony of other officers on the scene supports Barrett's claim that he did not hit his vehicle into plaintiff's motorcycle. See Alves Dep. at 47; Williams Dep. at 36-37.[2]

Viewing the evidence in the light most favorable to plaintiff and drawing all reasonable inferences in his favor, the court is not able to conclude that no rational factfinder could find that Barrett used excessive force. The deposition testimony of plaintiff and the CCRB report give rise to a genuine issue of material fact as to Barrett's conduct, and the court must therefore deny Barrett's motion for summary judgment on the excessive force claim.

ii) *Qualified Immunity*

Barrett also argues that he should be entitled to qualified immunity because he reasonably believed that he had the requisite legal justification to stop and detain plaintiff and that he could use reasonable force to detain plaintiff. Where a defendant claims qualified immunity and moves for summary judgment on this ground, the court engages in a two-step analysis. Saucier v. Katz, 533 U.S. 194, 201 (2001). The initial inquiry is whether, viewed in the light most favorable to the injured party, the facts alleged demonstrate that the officer's conduct violated a constitutional right. Id. If the alleged facts fail to establish a constitutional violation, the inquiry ends. If, however, "a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." Id. If a right has not

---

[2] In an effort to attack plaintiff's credibility, defendant Barrett also cites evidence that plaintiff did not complain about his injuries and did not seek medical attention immediately. Def. Barrett 56.1 Stmt. ¶¶ 105, 113, 140, 144. In addition, he notes that plaintiff was involved in another physical altercation around the same time of this incident and, thus, could have sustained injuries as a result of that incident. Id. 141-43. If anything, these facts only reinforce the court's conclusion that there is a genuine issue of material fact for a jury to decide.

been clearly established, then an official, acting unconstitutionally, is not on notice that his conduct is unlawful. Id. at 202. In the absence of such notice, summary judgment based on qualified immunity is appropriate. Id.

Viewed in the light most favorable to the plaintiff, the facts alleged indicate that defendant Barrett used excessive force and thus violated the Fourth Amendment. The court, therefore, proceeds to the second step of the Saucier analysis and asks whether this violated right was clearly established. There can be no doubt that the right to be free from excessive use of force was clearly established at the time of the incident. See, e.g., Graham, 490 U.S. at 395. It "would have been clear to a reasonable officer" that it was unlawful to use his vehicle to hit a stopped motorcycle, thereby throwing its driver to the ground. See Saucier, 533 U.S. at 202. Consequently, defendant Barrett does not have qualified immunity with regard to his alleged use of excessive force against plaintiff.

iii) *Failure to Intercede*

Barrett also argues that plaintiff's failure to intercede claim should fail as a matter of law because it is relates to the alleged violation of plaintiff's rights by Barrett himself. The court agrees. The Second Circuit has held that "[a] law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers." O'Neill v. Krzeminski, 839 F.2d 9, 11 (2d Cir. 1988). The duty to intercede has been invoked in cases where, as here, law enforcement officers are accused of using excessive force. See id. (collecting cases). This duty, however, is premised on the theory that the defendant officer did nothing to prevent the unlawful use of excessive force by other officers. See id. at 12 (upholding jury verdict finding defendant liable for excessive force because he did

nothing to prevent a fellow officer from dragging the perpetrator across the floor after watching him be beaten by another officer). Here, plaintiff's failure to intercede claim against Barrett is meritless because the only underlying constitutional violations alleged are claims against Barrett himself—namely, the excessive force, fabrication, and false statement claims. The court therefore dismisses plaintiff's § 1983 claim alleging that Barrett failed to intercede.

iv) *Conspiracy*

Barrett also contends that there is no evidence supporting plaintiff's conspiracy claim under § 1983. To establish a § 1983 conspiracy, a plaintiff must demonstrate that there is (1) an agreement between state actors or between a state actor and a private entity; (2) to act in concert to cause an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages. Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999). The Second Circuit has also recognized that "'conspiracies are by their very nature secretive operations,' and may have to be proven by circumstantial, rather than direct, evidence.'" Id. at 72 (quoting Rounseville v. Zahl, 13 F.3d 625, 632 (2d Cir. 1994)).

Here, plaintiff's complaint alleges that defendants Barrett and Does "conspired together and maliciously and willfully entered into a scheme to deprive plaintiff to his rights, well-being[,] and to commit the above-alleged unlawful acts." Amended Compl. ¶ 70. Plaintiff supports his allegation with his own deposition testimony and the CCRB report, which show that Barrett used his vehicle to hit plaintiff's stopped motorcycle, causing plaintiff to fall off the motorcycle and sustain injuries. See Hill Dep. at 48-49; Ptf. Ex. C at 21. This evidence directly contradicts the testimony of Barrett and the deputy sheriffs, Alves and Williams. While plaintiff has not established with direct evidence that Barrett and the deputy sheriffs had an agreement to

conspire to falsify their testimony, the circumstantial evidence—in the light most favorable to plaintiff—does suggest that there was an agreement between state actors to falsify testimony and cover-up an unconstitutional use of excessive force. Given that a jury may rationally infer that the defendant officers participated in a conspiracy to cover-up unconstitutional acts, summary judgment is not appropriate on plaintiff's conspiracy claim. See Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 131 (2d Cir. 1997) (denying summary judgment based on circumstantial evidence supporting claim that defendant officers engaged in conspiracy to maliciously prosecute plaintiffs).

Barrett also argues that plaintiff's conspiracy claim is barred by the intracorporate conspiracy doctrine. Under this doctrine, "there is no conspiracy if the conspiratorial conduct challenged is essentially a single act by a single corporation, acting exclusively through its own directors, officers, and employees, each acting within the scope of his employment." Herrmann v. Moore, 576 F.2d 453, 459 (2d Cir. 1978). "This is particularly so where the officers and employees are alleged to be acting within the scope of their employment." Rini v. Zwirn, 886 F. Supp. 270, 291 (E.D.N.Y. 1995). Although the Second Circuit has recognized the intracorporate conspiracy doctrine in the context of 42 U.S.C. § 1985, see Herrmann, 576 F.2d at 459; Girard v. 94th and Fifth Avenue Corp., 530 F.2d 66, 72 (2d Cir. 1976), a review of relevant case law suggests that it has not extended its application of the doctrine to conspiracy claims under § 1983. At least one district court in this circuit has applied the doctrine to bar a § 1983 conspiracy claim. See Nassau County Employee "L" v. County of Nassau F. Supp. 2d 293, 304 (E.D.N.Y. 2004). Courts in other circuits have also barred conspiracy claims under § 1983 in reliance on the intracorporate conspiracy doctrine. See, e.g., Buschi v. Kirven, 775 F.2d 1240, 1252-53 (4th

Cir. 1985); Veney v. Ojeda, 321 F. Supp. 2d (E.D. Va. 2004). The court, however, need not determine whether the doctrine applies to § 1983 conspiracy claims in the instant case because plaintiff's claim fits within an exception to the rule.

Under the "personal stake" exception, the intracorporate conspiracy doctrine does not apply "to individuals within a single entity when they are pursuing personal interests wholly separate and apart from the entity." Bond v. Bd. of Educ. of the City of New York, No. 97-1337, 1999 WL 151702, at *2 (E.D.N.Y. Mar.17, 1999). For the exception to apply, "[s]imply joining corporate officers as defendants in their individual capacities is not enough to make them persons separate from the corporation in legal contemplation." Girard, 530 F.2d at 72 (internal quotation marks and citation omitted). Rather, "[t]he plaintiff must also allege that they acted other than in the normal course of their corporate duties." Id. (internal quotation marks and citation omitted). Here, plaintiff clearly alleges that defendant Barrett acted in his own personal interest, not in the interest of the police department or the city, by conspiring with others to cover-up his alleged use of excessive force. Given that plaintiff has alleged that Barrett conspired based on a personal stake, the intracorporate conspiracy doctrine is inapplicable to the instant case. Consequently, the court denies summary judgment on plaintiff's conspiracy claim.[3]

2. State Law Claims

Given that the court has not dismissed plaintiff's § 1983 claims against defendant Barrett, the court maintains original jurisdiction over this action and must exercise supplemental jurisdiction over the related state law claims. See 28 U.S.C. § 1367(a) (2005). Barrett, however,

---

[3] In his motion for summary judgment, defendant Barrett does not seek to dismiss plaintiff's remaining § 1983 claims for fabrication and falsifying statements (claims two and three). Thus, the court concludes that those claims stand.

argues that two state law claims—intentional infliction of emotional distress and prima facie tort—fail as a matter of law and must be dismissed.

i) *Intentional Infliction of Emotional Distress (IIED)*

Barrett argues that plaintiff has failed to satisfy the elements of an IIED claim. Under New York law, a plaintiff must satisfy four elements to establish a claim of IIED: (1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress. See Howell v. New York Post Co., 81 N.Y.2d 115, 121 (1993). The New York Court of Appeals has emphasized, however, that "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. at 122 (internal quotation marks and citations omitted). The Court of Appeals has also strongly cautioned against claiming IIED where other tort remedies are available. See Fischer v. Maloney, 43 N.Y.2d 553, 558 (1978). Accordingly, "[n]o intentional infliction of emotional distress claim will lie where the conduct underlying the claim falls within the ambit of traditional tort liability." Hansel v. Sheridan, 991 F.Supp. 69, 75 (N.D.N.Y. 1998).

Barrett argues that his conduct does not constitute the "extreme and outrageous conduct" New York requires for this tort. In response, plaintiff maintains that Barrett's alleged "ramming" of plaintiff's motorcycle with his own vehicle is sufficiently outrageous to establish an IIED claim. In the instant case, the alleged conduct is entirely encompassed in plaintiff's traditional tort claims for assault and battery. Thus, plaintiff's claim for intentional infliction of emotional

distress must be dismissed. See Moore v. City of New York, 219 F.Supp.2d 335, 339 (E.D.N.Y. 2002).

## ii) *Prima Facie Tort*

Barrett also argues that plaintiff has failed to satisfy the requisite elements of a cause of action for prima facie tort. Under New York law, "[p]rima facie tort affords a remedy for the infliction of intentional harm, resulting in damage, without excuse or justification, by an act or series of acts which would otherwise be lawful." Freihofer v. Hearst Corp., 65 N.Y.2d 135, 142 (1985) (internal quotation marks and citations omitted). To establish a claim for prima facie tort, a plaintiff must show (1) the intentional infliction of harm; (2) which results in special damages; (3) without any excuse or justification; (4) by an act or series of acts which would otherwise be lawful. Id. at 142-43. The New York Court of Appeals has noted that prima facie tort is not a "catch-all alternative for every cause of action which cannot stand on its own legs." Id. at 143 (internal quotation marks and citations omitted). While a party is not foreclosed from pleading prima facie tort as an alternative where a traditional tort remedy exists, "once a traditional tort has been established the allegation with respect to prima facie tort will be rendered academic." Bd. of Educ. v. Farmingdale Classroom Teachers Ass'n, 38 N.Y.2d 397, 406 (1975); see also Freihofer, 65 N.Y.2d at 143. Moreover, the Court of Appeals has stressed that "[a] critical element of the cause of action is that plaintiff suffered a specific and measurable loss, which requires an allegation of special damages." Id.

Barrett argues that the prima facie tort claim must be dismissed because plaintiff failed to allege special damages. The court need not reach the issue of special damages because plaintiff has failed to establish that the act or series of acts alleged would otherwise be lawful. See Chen

v. United States, 854 F.2d 622, 629 (2d Cir. 1988) (dismissing prima facie tort claim because acts of racial harassment and violations of federal procurement regulations fail to "constitute[] conduct that is otherwise lawful"). The court cannot conclude that Barrett's alleged use of excessive force and participation in a conspiracy to cover-up his unconstitutional conduct constitute lawful conduct. Moreover, assuming plaintiff is pleading prima facie tort in the alternative, it would also fail if a jury were to accept Barrett's version of events. Barrett claims that he did not use his vehicle to hit plaintiff's motorcycle nor did he in any way injure plaintiff or conspire to cover-up his acts. He also claims that he stopped and detained plaintiff based on reasonable suspicion, and plaintiff was subsequently questioned as a witness not as a suspect. Thus, were a jury to believe Barrett, plaintiff would not have a viable claim for prima facie tort because he failed to establish either intentional infliction of harm or lack of justification for Barrett's actions. The court therefore concludes that plaintiff's prima facie tort claim fails as a matter of law and must be dismissed.

C.    Claims Against Defendant New York City

1. Section 1983 Claims

New York City argues that plaintiff's § 1983 claims should be dismissed because plaintiff has failed to demonstrate that a municipal policy caused the alleged constitutional violations. Section 1983 provides a cause of action against any person who, under color of state law, violates rights or privileges established under the Constitution or law of the United States. A local government is considered a "person" for § 1983 purposes and, therefore, can be sued under the statute. See Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978). In Monell, however, the Supreme Court established that municipal liability under § 1983 only applies

15

when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Id. at 690; see also Coon v. Town of Springfield, 404 F.3d 683, 686 (2d Cir. 2005). Thus, the plaintiff must establish (1) the existence of some municipal policy or custom and (2) "a causal connection—an 'affirmative link'—between the policy and the deprivation of his constitutional rights." Vippolis v. Village of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985) (citation omitted).

i) *Failure to Train*

In his amended complaint, plaintiff alleges that New York City should be held liable under § 1983 due to its failure to train police officers who have engaged in excessive and unjustified use of force. The Supreme Court has held that a municipality may be held liable for failure to train its employees where it acts with "'deliberate indifference' to the rights of persons with whom the police come into contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989). To establish deliberate indifference, "plaintiffs [must] identify a specific deficiency in the city's training program and establish that that deficiency is 'closely related to the ultimate injury,' such that it 'actually caused' the constitutional deprivation." Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 129 (2d. Cir. 2004) (quoting Canton, 489 U.S. at 390-91). Such proof is necessary to ensure that "'the officer's shortcomings ... resulted from ... a faulty training program' rather than from the negligent administration of a sound program or other unrelated circumstances." Id. (quoting Canton, 489 U.S. at 390-91).

Here, plaintiff provides no evidence of a specific deficiency in New York City's training program, nor has he offered any evidence establishing the close relationship between

16

the deficient program and the injury at issue. The court therefore dismisses plaintiff's § 1983 claim concerning New York City's alleged failure to properly train its employees.

ii) *Failure to Supervise*

In his amended complaint, plaintiff also argues that New York City failed to properly supervise its police officers. A failure to supervise claim need not rely on an explicitly stated municipal policy or regulation. See Vann v. City of New York, 72 F.3d 1040, 1049 (2d Cir. 1995). Rather, to survive summary judgment, a plaintiff must establish that "a policymaking official had notice of a potentially serious problem of unconstitutional conduct, such that the need for corrective action or supervision was 'obvious,' and the policymaker's failure to investigate or rectify the situation evidences deliberate indifference, rather than mere negligence or bureaucratic inaction." Amnesty America, 361 F.3d at 128 (quoting Vann, 72 F.3d at 1049). "[D]eliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." Vann, 72 F.3d at 1049. Alternatively, deliberate indifference may be proven by "expert testimony that a practice condoned by the defendant municipality was 'contrary to the practice of most police departments' and was 'particularly dangerous' because it presented an unusually high risk that constitutional rights would be violated." Id.

Here, plaintiff merely offers generalized statistics related to police misconduct complaints made to the CCRB several years prior to the incident at issue. See Amended Compl. ¶¶ 49-51. These statistics suggest that excessive force allegations comprise a substantial portion of total civilian complaints of police misconduct. See id. ¶ 49. Plaintiff also cites statistics indicating that CCRB conducts "full investigations" on less than half of the

complaints received and that the police department disciplines a small percentage of officers. See id. ¶¶ 50-51. Plaintiff argues that these numbers demonstrate that New York City has been on notice that police officers, including defendants Barrett and Does, "were disproportionately involved in police misconduct and abuse, particularly involving excessive force and brutality," and that New York City has failed to remedy the situation. See id. ¶ 53.

Even assuming arguendo that these statistics are accurate, plaintiff has failed to demonstrate that New York City has acted with deliberate indifference. At most, plaintiff's evidence demonstrates that New York City was on notice that there were a substantial number of complaints about police officers' use of excessive force against civilians. Plaintiff, however, does not offer any evidence establishing that New York City failed to follow up on the credible claims of excessive force or failed to discipline police officers who actually used excessive force against civilians. Plaintiff can not establish that New York City was deliberately indifferent to claims of excessive force by simply noting that the percentage of "fully investigated" CCRB complaints or disciplinary actions is small. Without an understanding of the types of complaints the CCRB "fully investigated," the disposition of the remaining complaints, or the categories of police misconduct that warranted discipline, plaintiff's statistics are meaningless to the issue of the whether New York City acted with deliberate indifference. Consequently, the court must dismiss plaintiff's § 1983 claim alleging that New York City failed to adequately supervise its employees.

iii) *Failure to Discipline*

Plaintiff's claim that New York City failed to discipline officers for using excessive force should also be dismissed as a matter of law. As the CCRB report dated August 18, 2003

18

indicates, New York City did indeed pursue an investigation of defendant Barrett and the other officers involved in the incident at issue. See Ptf. Ex. I. Moreover, the CCRB investigator concluded that the allegation that Barrett employed excessive force was substantiated and that another allegation against an unknown officer should be further investigated. Id. at 22. At his deposition on April 5, 2005, Barrett testified that his case was still pending before the police disciplinary committee. Barrett Dep. at 94-95. Even assuming that the almost two-year delay between the issuance of the CCRB report and any disciplinary action demonstrates a failure to discipline, such a claim suggests, at most, negligent administration or one isolated incident of bureaucratic inaction. "[M]ere negligence or bureaucratic inaction" does not rise to the level of an actionable violation. See Amnesty America, 361 F.3d at 128. Plaintiffs must raise an inference that the municipality or its policymakers actually condoned such conduct and that the system is "so deficient as to reflect a policy of deliberate indifference to the civil rights of the citizenry." See Sarus v. Rotundo, 831 F.2d 397, 401-02 (2d Cir.1987). Plaintiff has failed to raise such an inference and, therefore, the court dismisses the § 1983 claim alleging that New York City failed to discipline defendants Barrett and Does.[4]

---

[4] Plaintiff also alleges that New York City has a policy or practice in place "wherein police officers regularly cover-up police use of excessive and unjustified force by telling false and incomplete stories." Amended Compl. ¶ 47. Plaintiff has failed to support his "code of silence" theory of § 1983 with any evidence, aside from the allegation that Barrett made false statements regarding the incident at issue. Even if the allegation is substantiated, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985). Therefore, the court also dismisses plaintiff's § 1983 claim under the "code of silence" theory.

## 2. State Law Claims

### i) *Defective Notice of Claim*

New York City argues that plaintiff's state law claims against the city fail as a matter of law because plaintiff failed to comply with the state's notice of claim requirements. As a general rule, "in a federal court, state notice-of-claim statutes apply to state-law claims." Hardy v. New York City Health & Hosp. Corp., 164 F.3d 789 (2d Cir. 1999). Under New York law, a notice of claim is a "condition precedent" to bringing a tort claim against a municipality or any of its officers, agents, or employees. See N.Y. Gen. Mun. §§ 50-i(1)(a); 50-e(1)(a). The purpose of the notice of claim requirement is to afford the municipality "an adequate opportunity to investigate the circumstances surrounding the accident and to explore the merits of the claim while information is still readily available." Teresta v. City of New York, 304 N.Y. 440, 443 (1952). A plaintiff must serve the notice of claim within ninety days after the claim arises. See id. § 50-e(1)(a). In addition, the notice must specify (1) the name and address of each claimant and his or her attorney; (2) the nature of the claim; (3) the time and the place of the incident; and (4) the injuries or damages claimed. See id. § 50-e(2). Notice of claim requirements are generally strictly construed, and failure to comply with the requirements typically results in dismissal due to failure to state a cause of action. Hardy, 164 F.3d at 793-94. To determine whether a notice of claim is sufficient, the proper inquiry is "whether it includes information sufficient to enable the city to investigate." Brown v. City of New York, 95 N.Y.2d 389, 393 (2000) (citations and internal quotation marks omitted). More specifically, the inquiry focuses on "whether based on the claimant's description municipal authorities can locate the place, fix the time[,] and understand the nature of the accident." Id.

Here, plaintiff timely served a notice of claim upon New York City. See Def. New York City Ex. K. However, New York City argues that the notice of claim fails to fully specify the nature of plaintiff's claim or identify the place of the incident. In his notice of claim, plaintiff states he "was struck from the rear by a vehicle owned and operated by the City" and "was thrown from his motorcycle and received injuries." Id. at 1. Plaintiff fails to specify the location of the accident or the fact that he is bringing a negligent hiring and supervision claim. Id. New York City correctly notes that such deficiencies are typically fatal to claims against the city. See Fincher v. County of Westchester, 979 F. Supp. 989, 1003 (S.D.N.Y. 1997) (collecting state cases). However, New York's notice of claim statute also permits the court to disregard such defects if they were made in good faith and did not prejudice the city. See N.Y. Gen. Mun. § 50-e(6). Here, New York City alleges that plaintiff's notice of claim was defective, but fails to put forth any facts establishing that it was prejudiced by the defect. Moreover, there is no showing that the defect was made in bad faith. Consequently, the court exercises its discretion pursuant to N.Y. Gen. Mun. § 50-e(6) to disregard the defect. See Malcom v. City of New York, 770 N.Y.S.2d 79, 80 (2d Dep't 2003) (disregarding defect in notice of claim, which failed to allege location of arrest, because no actual prejudice was demonstrated nor was there a showing of bad faith). Plaintiff's state law claims against New York City are, therefore, properly before the court.

ii) *Negligent Hiring and Supervision*

New York City argues that summary judgment is appropriate with regard to plaintiff's negligent hiring and supervision claim because such a claim cannot be sustained when an employee is acting within the scope of his employment. "A claim for negligent hiring or

21

supervision can only proceed against an employer for an employee acting outside the scope of her employment." Colodney v. Continuum Health Partners, Inc., No. 03 Civ. 7276, 2004 WL 829158, at * 8 (S.D.N.Y. Apr. 15, 2004). Where an employee acts within the scope of his or her employment, the employer generally is held liable for all the employees' torts under the doctrine of respondeat superior. See Niles v. Palmer, No. 97 Civ. 7573, 1999 WL 1419042, at *14 n.6 (S.D.N.Y. Oct. 26, 1999). Accordingly, under the theory of respondeat superior, an employer is liable for any damages caused by an employee's negligence, and "no claim may proceed against the employer for negligent hiring or retention." Karoon v. New York City Transit Auth., 659 N.Y.S.2d 27, 29 (1st Dep't 1997).

Here, New York City concedes that defendant Barrett was acting within the scope of his employment as an officer with the New York City Police Department. See Def. New York City Memorandum of Law at 19-20.[5] Accordingly, plaintiff's negligent hiring and supervision claim must be dismissed as a matter of law.

iii) *Respondeat Superior*

Finally, New York City argues that the court should decline to exercise supplemental jurisdiction over the respondeat superior claim because all the federal claims against the city have been dismissed. Under the Federal Rules of Civil Procedure, the court "may decline to exercise supplemental jurisdiction ... if the [] court has dismissed all claims over which it has original

---

[5] New York City states that "plaintiff himself is asserting that Detective Barrett was acting as a police officer and in the scope of his duties as a police officer to investigate crimes. Thus, plaintiff cannot claim that Detective Barrett was not acting in the scope of his employment on July 2, 2002." Def. New York City Memorandum of Law at 20. Given that defendant New York City is arguing that there is no triable issue of fact regarding whether defendant Barrett was acting within the scope of his employment on the date at issue, the court infers that defendant New York City claims that defendant Barrett was acting within the scope of his employment.

jurisdiction." 28 U.S.C. § 1367(c). Although the court has dismissed all federal claims against New York City, the respondeat superior claim against the city is directly related to the state law claims against defendant Barrett. In the interests of judicial economy, the court exercises its discretion to retain jurisdiction over plaintiff's remaining state law claim against New York City.

### CONCLUSION

For the foregoing reasons, defendants' motions for summary judgment are granted in part and denied in part. The court denies defendant Barrett's motion for summary judgment for plaintiff's excessive force and conspiracy claims under § 1983 and grants summary judgment on the failure to intercede, intentional infliction of emotional distress, and prima facie tort claims. The court denies defendant New York City's motion for summary judgment for plaintiff's respondeat superior claim, but grants summary judgment on plaintiff's § 1983 and negligent supervision and training claims against the city.

SO ORDERED.

Allyne R. Ross
United States District Judge

Dated: December 29, 2005
       Brooklyn, New York

SERVICE LIST:

Plaintiff's Counsel

Rene Myatt
The Law Office of Rene Myatt
204-04 Hillside Avenue, 2nd Floor
Hollis, NY 11423

Defendants' Counsel

Hillary A. Frommer
Corporation Counsel for the
City of New York Law Department
100 Church Street
New York, NY 10007

James M. Moschella
Karasyk & Moschella, LLP
225 Broadway, 32nd Floor
New York, NY 10007