UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X

SEAN HILL,

                               Plaintiff,

    -against-

THE CITY OF NEW YORK, DETECTIVE GREGORY
BARRETT, individually and in his official capacity as a
New York City Police Officer, and POLICE OFFICER
JOHN DOES, individually and in their official capacity as
New York City Police Officers, the identity and number of
whom are presently unknown,

                               Defendants.

**OPINION & ORDER**

03-CV-1283 (ARR) (KAM)

------------------------------------------------------------------------ X

**MATSUMOTO, United States Magistrate Judge:**

        Plaintiff Sean Hill brings this action against defendants Detective Gregory Barrett ("Barrett"), Police Officer John Does, and the City of New York, pursuant to 42 U.S.C. § 1983, alleging violations of his Fourth and Fourteenth Amendment rights, and state tort claims of assault, battery, intentional infliction of emotional distress, and negligence. Following the Opinion and Order of the Honorable Allyne R. Ross on December 29, 2005, granting in part and denying in part the defendants' motions for summary judgment (docket no. 50, 12/29/05 Opinion and Order), plaintiff's remaining claims against Detective Barrett and the Police Officer John Does are that, pursuant to 42 U.S.C. § 1983, they violated plaintiff's constitutional rights in that: (1) they used excessive force in stopping and detaining plaintiff, and (2) they "conspired together and maliciously and willfully entered into a scheme to deprive plaintiff" of his rights (docket no. 12, Am. Compl. ¶ 70). Plaintiff's sole remaining claim against the City of New York is a

1

respondeat superior claim arising from plaintiff's claims against Detective Barrett and the Police Officer John Does.

After the resumption of expert discovery, and after the court granted leave to plaintiff to file an amended expert report following the defendants' first motion to preclude plaintiff's expert report (*see* order dated 10/4/06), defendants moved for a second time to preclude the report and testimony of plaintiff's expert witness, Dr. Stephen Leinen. Plaintiff seeks to introduce Dr. Leinen as an expert in police procedures to testify regarding police culture and the "Blue Wall of Silence." For the reasons stated below, the court grants defendants' motion to preclude Dr. Leinen's expert report and testimony.

## I. BACKGROUND

The facts of this case, relevant to the instant motion, are briefly summarized here.[1] On the afternoon of July 2, 2002, plaintiff witnessed a shooting at Rutland Road and 94th Street in Kings County, New York. Plaintiff was riding a yellow and black motorcycle at the time of the shooting. After observing the shooting, plaintiff parked his motorcycle at the corner of 94th Street to take a closer look at the shooting victim, and remained on the scene talking to a friend about the incident. Police arrived at the crime scene, secured the area, and told plaintiff he could not leave the secured area. Plaintiff explained that he needed to leave to start his shift at his job

---

[1] Unless otherwise noted, the facts cited here are drawn from Judge Ross's December 29, 2005 Opinion and Order, which cites to the Rule 56.1 statements submitted by the parties in connection with the defendants' motions for summary judgment. However, the court duly notes the defendants' statement that they "do not concede that any of the facts attributed to plaintiff's version of events contained in the [December 29, 2005] Opinion and Order are true." (Docket no. 74, Defendants' Memorandum of Law in Support of their Motion to Preclude the Expert Report and Testimony of Stephen Leinen ("Defts' Mem. of Law"), at 1 n.1.)

with the New York City Transit Authority, provided his name to the police, and was permitted to leave the crime scene.

According to defendants, at some point, a description of the perpetrator as an African-American male driving a yellow and black motorcycle was transmitted over the police radio. Defendant Barrett and his partner, Detective Patrick Rafferty, were driving in the vicinity of the crime scene at this time, received the radio transmission, and observed plaintiff driving on his motorcycle from the crime scene. The detectives followed plaintiff, who stopped at a red traffic light at the intersection of Remsen Avenue and Winthrop Street.

According to plaintiff, a car hit his motorcycle from behind and threw him from his motorcycle to the ground. Plaintiff claims that two white male officers and two black male officers surrounded him with guns in his face and then threw him on the car, handcuffed him, and searched his person. Plaintiff further claims that he broke his right hand as a result of the defendants' conduct. Defendants, on the other hand, claim that Barrett stopped his car behind the motorcycle, and that Detectives Barrett and Rafferty then exited their vehicle and removed plaintiff from the motorcycle. Meanwhile, two deputy sheriffs arrived at the scene and parked their car in front of plaintiff's motorcycle. Defendants claim that plaintiff never fell to the ground and never complained of any injuries, and that there was no damage to the rear of plaintiff's motorcycle.

Defendants bring the instant motion to exclude the amended expert report and testimony of plaintiff's expert, Dr. Leinen. In his report, Dr. Leinen, a former New York City Police Officer and a professor of sociology and criminology, opines that,

> The statements of both deputy sheriffs and Detectives Barrett and Rafferty are in sharp contrast to Mr. Hill's statement that the

> detective vehicle did in fact bump/ram his vehicle. What might
> account for these contrasting statements? One strong possible
> explanation is the Blue Wall of Silence and Code of Silence.

(Docket no. 73, Ex. A to Affidavit of Hillary A. Frommer, Report by Stephen Leinen, Ph.D., dated December 18, 2006 ("Leinen Report") at 4.)

Dr. Leinen defines the Blue Wall of Silence as "the reluctance of members of law enforcement to act upon the misconduct of other members" and defines the Code of Silence as "that unwritten, often unspoken, rule that prohibits members of law enforcement from reporting the misconduct of other members." (*Id.* at 5.) In a section titled "Retaliation," Dr. Leinen states that "Retaliation is punishment inflicted upon members of the Department who violate the code of silence. Retaliation is designed to punish informers and to convey the message to other members of the Department that should they turn against their colleagues or bosses, despite any abuses they may have experienced, they too could be subjected to reprisals." (*Id.* at 8.) Dr. Leinen also notes that "Retaliation is not necessarily an individual action. It can be conspiratorial in nature in the sense that it could involve a number of persons." (*Id.*)

Defendants assert that Dr. Leinen's expert report and testimony should be excluded on the grounds that: (1) Dr. Leinen's opinion that witnesses provided conflicting accounts of the July 2, 2002 incident is an opinion as to witness credibility which is not relevant or admissible; (2) Dr. Leinen's proposed testimony about the Blue Wall of Silence and Mollen Commission report[2] is not relevant and should be excluded; and (3) Dr. Leinen's expert opinion

---

[2] The Mollen Commission report was issued in July 1994 by a commission headed by Judge Milton Mollen and established by New York City Mayor David Dinkins to investigate allegations of corruption within the New York City Police Department. The full name of the commission was the New York City Commission to Investigate Allegations of Police Corruption and the Anti-Corruption Procedures of the Police Department.

fails to meet the reliability requirements mandated by the Supreme Court. (Docket no. 72, Defendants' Notice of Motion, at 1.) In response, plaintiff argues that: (1) Dr. Leinen's expert testimony is helpful to the jury in understanding the relevant evidence and determining the facts in issue; (2) Dr. Leinen's opinion, expert report and testimony meet the requirements of Rule 702 of the Federal Rules of Evidence and his testimony should be admissible; (3) Dr. Leinen's credentials, submitted pursuant to Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure, qualify him to testify as an expert on the culture of law enforcement in general and the New York City Police Department ("NYPD") in particular; and (4) the probative value of his testimony far outweighs any prejudice that may occur. (Docket no. 77, Affirmation of Rene Myatt in Opposition to Motion to Preclude, at 1.)

## II. DISCUSSION

Federal Rule of Evidence 702 provides the standard governing a district court's determination of whether to admit scientific or other expert testimony. It provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The rule incorporates the principles established in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, in which the Supreme Court charged trial courts with a gatekeeping role to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. 579, 589 (1993). In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999), the Court

clarified that a district court's should play a gatekeeping role in determining the admissibility of not only scientific testimony, but also testimony based on technical or experience-based expertise. Under Rule 702, a district court, in determining whether expert testimony is admissible, must consider: (1) whether the witness is "qualified as an expert" to testify as to a particular matter; (2) whether the opinion proffered by the expert is based upon reliable data and methodology; and (3) whether the expert's testimony (as to a particular matter) will "assist the trier of fact." *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005). The party seeking to admit the expert testimony must prove its admissibility by a preponderance of the evidence. *Daubert*, 509 U.S. at 593 n.10. The court addresses each of these concerns as they relate to Dr. Leinen's report and testimony.

### A. Dr. Leinen's qualifications

As noted in his opinion, Dr. Leinen served 23 years in the NYPD, from 1966-88, and has a Ph.D. in Sociology and Criminology. He is presently writing a book on police misconduct and the Blue Wall of Silence, and has taught college courses in sociology, criminology, and criminal justice, including courses on police misconduct and the Blue Wall of Silence. Given his police and academic background, the court finds that Dr. Leinen is qualified as an expert in police misconduct and the Blue Wall of Silence generally.

### B. Reliability of Dr. Leinen's data and methodology

The Supreme Court in *Daubert* set forth a non-exclusive set of factors a district court may consider in evaluating whether an expert opinion is based on a sufficiently reliable

6

methodology: (1) whether a theory or technique can be and has been tested; (2) whether it has been subjected to peer review and publication; (3) whether, in respect to a particular technique, there is a high rate of error and whether there are standards controlling the technique's operation; and (4) whether the technique is "generally accepted" within the "relevant scientific community." *See Daubert*, 509 U.S. at 593-94. In *Kumho*, the Court held that district courts may apply these factors to technical or other fields of expertise, but emphasized that "the test of reliability is 'flexible,' and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case." 526 U.S. at 141. Instead, a trial judge has "considerable leeway in deciding in a particular case how to go about deciding whether particular expert testimony is reliable," and should consider the factors identified in *Daubert* "where they are reasonable measures of the reliability of expert testimony." *Id.* at 152.

In determining the reliability of an expert opinion, the Supreme Court has noted that "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997); *see also Amorgianos v. AMTRAK*, 303 F.3d 256, 266 (2d Cir. 2002) ("[W]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony.")

Here, in reaching his opinion that "one strong possible explanation" for the "contrasting statements" between plaintiff and the deputy sheriffs, Detective Rafferty and defendant Barrett is "the Blue Wall of Silence and the Code of Silence," Dr. Leinen reviewed

certain unspecified police procedures; the Civilian Complaint Review Board investigation and findings regarding plaintiff's claims; the pleadings in this case; Judge Ross's December 29, 2005 Opinion and Order; and the deposition transcripts of plaintiff, defendants and other individuals in this case. (Leinen Report at 3.) Dr. Leinen's discussion of the Blue Wall of Silence and Code of Silence refers to and quotes from the Mollen Commission Report, and lists various news articles between April 1994 and February 2003 concerning incidents of retaliation against NYPD officers which he cites as evidence of the continuing existence of the Blue Wall of Silence and Code of Silence. (*Id.* at 6-10.) Dr. Leinen also lists various examples of retaliation, drawn from his research and personal experiences, and he asserts that he has spoken to unidentified members of the NYPD, on unstated dates, who "assured" him that the Blue Wall of Silence is "alive and well in the Department." (*Id.* at 8-10.)

Based on this data and methodology, Dr. Leinen proposes to offer as his expert opinion, that "one strong possible explanation" why the police officers' testimony is "in sharp contrast" with plaintiff's regarding whether Detective Barrett's vehicle rammed plaintiff's motorcycle, is the existence of the Blue Wall of Silence and Code of Silence. However, other than noting that the police officers' testimony in this case is in sharp contrast to the plaintiff's, Dr. Leinen provides no specific support for and points to no particular facts in this action explaining why the Blue Wall of Silence and Code of Silence may play a role in this particular case. Instead, he offers only a blanket assertion that the Blue Wall of Silence is a "normal, inevitable feature of policing" which "permeates virtually every level of policing", and that the Code of Silence is the "unwritten, often unspoken, rule that prohibits members of law enforcement from reporting the misconduct of other members." (*Id.* at 5.) Lacking an

8

explanation for why the Blue Wall of Silence and Code of Silence may be present in this case, the court must conclude that there is "simply too great an analytical gap between the data and the opinion proffered." *Joiner*, 522 U.S. at 146. In addition, other than his assertion that the Blue Wall of Silence and Code of Silence are a normal part of policing and law enforcement everywhere, Dr. Leinen provides no support for his conclusion that these phenomena apply equally to the deputy sheriffs in this case, who are not a part of the NYPD, but rather are members of the New York City Sheriff's Office, which is a component of the Department of Finance.

Considering the *Daubert* factors that are relevant here, the court also notes that Dr. Leinen's *ipse dixit* conclusion is not susceptible to testing in any meaningful way, and he has provided no evidence that his methodology for reaching his conclusion – namely, reviewing the pleadings, depositions and selected other materials unrelated to this case – is a generally accepted methodology within the sociological community for reaching such conclusions. *See Rowe Entm't v. The William Morris Agency, Inc.*, 98 Civ. 8272, 2003 U.S. Dist. LEXIS 17623, at *34-35 (S.D.N.Y. Oct. 3, 2003) (noting that expert provided no evidence that his methodology of reviewing complaint and case materials, and comparing these accounts to accounts of discriminatory acts in other industries, constituted a generally accepted method within the sociological community for concluding that claims of racial discrimination were valid).

Ultimately, Dr. Leinen's opinion is comprised of no more than his "say-so" that the Blue Wall of Silence and Code of Silence explain the differences between the testimony of the particular police officers and plaintiff in this case. Under Federal Rule of Evidence 702, the court cannot conclude that this testimony is based upon sufficient facts or data, that it is the

9

product of reliable principles and methods, or that Dr. Leinen has applied the principles and methods reliably to the facts of this case. As such, Dr. Leinen's testimony must be excluded because it is "speculative and conjectural," *Boucher v. United States Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996).

### C. Helpfulness of Dr. Leinen's testimony in assisting the trier of fact

Federal Rule of Evidence 702 allows an expert to testify if the "scientific, technical, or other specialized knowledge" to be provided by the expert "will assist the trier of fact to understand the evidence or to determine a fact in issue." As the Supreme Court has noted, this condition "goes primarily to relevance," and requires "a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Daubert*, 509 U.S. at 591-92.

"Generally, the use of expert testimony is not permitted if it will 'usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it.'" *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994) (quoting *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991)); *accord United States v. Scop*, 846 F.2d 135, 140 (2d Cir. 1988), *rev'd in part on reh'g on other grounds*, 856 F.2d 5 (2d Cir. 1988). This is so because "when an expert undertakes to tell the jury what result to reach, this does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's. When this occurs, the expert acts outside of his limited role of providing the groundwork in the form of an opinion to enable the jury to make its own informed determination." *Duncan*, 42 F.3d at 101. Here, it is for the jury, not the experts, to decide whether the statements of the witnesses, including plaintiff, defendant Barrett and the other law

enforcement officers, are, in fact, "in sharp contrast."

Similarly, because "the credibility of witnesses is exclusively for the determination by the jury," *Scop*, 846 F.2d at 142, the Second Circuit "has consistently held that expert opinions that constitute evaluations of witness credibility, even when such evaluations are rooted in scientific or technical expertise, are inadmissible under Rule 702." *Nimely*, 414 F.3d at 398 (citing *United States v. Lumpkin*, 192 F.3d 280, 289 (2d Cir. 1999) and *Scop*, 846 F.2d at 142-43). *See also Lippe v. Bairnco Corp.*, 288 B.R. 678, 687 (S.D.N.Y. 2003) ("Expert testimony is not relevant if the expert is offering a personal evaluation of the testimony and credibility of others or the motivations of the parties."); *Bazile v. City of New York*, 215 F. Supp. 2d 354, 365 (S.D.N.Y. 2002) (precluding expert testimony where "expert was simply offering his own opinion regarding the relative credibility of the testimony by [plaintiff] and the NYPD police officers"), *aff'd* at 2003 U.S. App. LEXIS 8439 (2d Cir. May 1, 2003).

Here, Dr. Leinen opines in his expert report that "the statements of both deputy sheriffs and Detectives Barrett and Rafferty are in sharp contrast to Mr. Hill's statement that the detective vehicle did in fact bump/ram his vehicle," and that "one strong possible explanation" for "these contrasting statements" is the Blue Wall of Silence and Code of Silence. Dr. Leinen also states that the Blue Wall of Silence and Code of Silence cause members of law enforcement to be "reluctant" to act upon or report the misconduct of their colleagues.

In his memorandum of law, plaintiff argues that Dr. Leinen's proposed opinion would not "suggest that anyone is lying," but would explain to the jury that "there would be some pressure to lie." (*See* docket no. 77, Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Preclude, at 11.) However, plaintiff also states that:

11

> Dr. Leinen's proposed testimony is relevant to the issue of whether
> there exists a bias among the police witnesses that would allow a
> jury to further evaluate their credibility. Dr. Leinen's testimony on
> the 'code of silence,' if believed by the jury, would be sufficient to
> support an inference that there is a culture and practice of officers
> banning [sic] together to cover up the misdeeds and misconduct of
> fellow officers.

(*Id.* at 17.) Thus, while arguing that Dr. Leinen's opinion would not "suggest that anyone is lying," plaintiff concedes that Dr. Leinen's opinion would be relevant to showing the existence of bias among the police witnesses in this case and allowing the jury to infer that they "ban[ded] together to cover up the misdeeds and misconduct of fellow officers." Although expert testimony regarding the Blue Wall of Silence and Code of Silence could be useful to a jury in assessing plaintiff's claim of conspiracy against the police officer defendants, the court concludes that Dr. Leinen's opinion poses too great a risk of substituting his opinion on the credibility and motivations of the police officer witnesses for that of the jury. To allow Dr. Leinen's testimony to be admitted in this action would cast the relevance net so widely as to hold that testimony regarding the Blue Wall of Silence could be admitted in any case in which a police officer's testimony was challenged. *See Shaw v. City of New York*, 95 Civ. 9325, 1997 U.S. Dist. LEXIS 4901, at *27 (S.D.N.Y. Apr. 15, 1997) (granting motion to exclude portions of Mollen Commission report offered by plaintiff in case involving claims of excessive force, false arrest and malicious prosecution against police officers and New York City, and noting that "If the Mollen Commission Report were held admissible here, it logically would be admissible in every suit, civil and criminal, in which a police officer was alleged to be lying to support the testimony of a fellow police officer. Indeed, it would be admissible in every civil and criminal case in which even a single police officer testified. The Court declines to establish such a

precedent").

Notably, courts in this circuit which have found evidence and testimony regarding the Blue Wall of Silence to be relevant and helpful to the trier of fact have done so in the context of suits involving *Monell* claims by plaintiffs alleging that the City of New York was aware of a municipal policy or custom leading to the deprivation of the plaintiff's constitutional rights, specifically retaliation against police officers for reporting misconduct. *See e.g., Ariza v. City of New York*, No. CV-93-5287, 1996 U.S. Dist. LEXIS 20250, *13-16 (E.D.N.Y. Mar. 7, 1996) (finding Mollen Commission report to be relevant to a police officer's *Monell* claims that he suffered retaliation after complaining about discriminatory practices in policing). Other courts have found the Mollen Commission report not to be relevant where a plaintiff has failed to demonstrate a connection between his or her *Monell* claims and the practices described in the Mollen Commission report. *See Granato v. City of New York*, 98 CV 667 (ILG), 1999 U.S. Dist. LEXIS 18550, at *35 n.18 (E.D.N.Y. Oct. 18, 1999) (granting summary judgment on plaintiff's *Monell* claim where, "in the absence of specific allegations showing some resemblance between the corrupt practices detailed in the Mollen Commission report and the circumstances of this case, neither the report, nor vague allusions to the 'blue wall' suffice to create a genuine issue of material fact"); *Yanez v. City of New York*, 29 F. Supp. 2d 100, 112 (E.D.N.Y. 1998) (granting summary judgment on plaintiff's *Monell* claims, noting that "plaintiff has not adequately explained the connection between the alleged plot among these police officers and the 'blue wall of silence' described in the Mollen report. While the Mollen Commission found that there was a practice of officers defending each other against charges of corruption, the link in this instance is tenuous at best"). In any case, unlike *Ariza* and other cases in which the Mollen Commission

report has been held to be relevant, "this case does not involve a Monell claim against the City[,] [n]or does it involve a suit by a police officer against the Police Department or the City." *Shaw*, 1997 U.S. Dist. LEXIS 4901, at *27.

Similarly, courts within this circuit which have found Dr. Leinen's testimony regarding the Blue Wall of Silence and retaliation to be relevant and admissible, have done so in the context of claims by plaintiffs who were themselves law enforcement employees and who claimed either that they were retaliated against after voicing complaints, or that they were discouraged from taking advantage of complaint procedures because of the Blue Wall of Silence. *See Katt v. City of New York*, 151 F. Supp. 2d 313, 359 (S.D.N.Y. 2001) (denying defendant's motion for judgment as matter of law in hostile working environment case, and finding that Dr. Leinen's testimony "was helpful to assist the jury to understand why . . . plaintiff, a civilian police administrative aide with a sexual harassment claim, might reasonably have chosen not to take advantage of established departmental complaint procedures"); *Valentin v. New York City*, No. 94 CV 3911, 1997 U.S. Dist. LEXIS 24059, at *72-73 (E.D.N.Y. Sept. 9, 1997) (finding Dr. Leinen's testimony on retaliation and the Blue Wall of Silence to be relevant where plaintiff, an officer with the New York City Housing Authority Police Department, claimed that she was subject to retaliation after complaining about sexual harassment). Here, where plaintiff is not a member of law enforcement and has not brought a claim of retaliation, Dr. Leinen's testimony regarding the Blue Wall of Silence and Code of Silence is of limited helpfulness to the trier of fact.

Moreover, if plaintiff's primary purpose in offering Dr. Leinen's testimony is to assist jurors who are predisposed to believe that police officers do not lie by providing a police

14

expert to testify that police officers may in fact lie (*see* docket no. 77, Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Preclude, at 10-12), these concerns are readily addressed during jury selection *voir dire*, when jurors are questioned to determine if they have any predisposed opinions as to the credibility of police officers or law enforcement personnel, and as part of the court's charges to the jury prior to deliberation. *See Shaw*, 1997 U.S. Dist. LEXIS 4901, at *29 (declining to allow plaintiff to introduce Mollen Commission report excerpts into evidence where "[c]urrent public perception, along with an appropriate jury instruction on witness credibility including that the credibility of the specific police officers who are defendants and/or witnesses is for the jury to determine, renders the Mollen Report superfluous in this case")

In any case, Dr. Leinen's testimony is also properly excluded on the basis of Federal Rule of Evidence 403, which provides that evidence, even if relevant, "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." Even assuming that Dr. Leinen's testimony regarding the Blue Wall of Silence and Code of Silence were relevant to this action, the court does not believe that any benefit his testimony would provide to the trier of fact would be outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. The credibility of the witnesses, including the police officers, in this action are for the jury to determine, and Dr. Leinen's proposed testimony regarding the Blue Wall of Silence and Code of Silence is inappropriate here where plaintiff has provided little or no support to show that these phenomena are applicable here.

### III.  CONCLUSION

For the foregoing reasons, the court grants defendants' motion to preclude the expert report and testimony of plaintiff's expert, Dr. Leinen.

**SO ORDERED**.

Dated: July 5, 2007
        Brooklyn, New York

                                           /s/
                                **Kiyo A. Matsumoto**
                                United States Magistrate Judge
                                Eastern District of New York